**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**

STONE TECHNOLOGY (HK) CO., LTD.,

                                CASE NO.: 1:20-cv-23251-BB

        Plaintiff,

v

GLOBAL GEEKS, INC.,

        Defendant.

_____

<u>**MEMORANDUM OF LAW IN SUPPORT OF GLOBALGEEKS, INC.'S EXPEDITED MOTION TO DISQUALIFY JIANYIN LIU, ESQ. AS TRIAL COUNSEL FOR SONE TECHNOLOGY (HK) CO., LTD. IN THIS MATTER**</u>

Glen M. Lindsay, Esq.
Florida Bar No.: 59200
SAAVEDRA | GOODWIN
312 SE 17th Street
2nd Floor
Fort Lauderdale, FL 33316
Tel.: (954) 767-6333
Fax: (954) 767-8111
Email: glindsay@saavlaw.com
Service Email: eservice@saavlaw.com

Benjamin J. Eichel, Esq.*
BONI, ZACK & SNYDER
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004
Tel: 610.822.0200
Email: beichel@bonizack.com

*Admitted pro hac vice*

*Attorneys for GlobalGeeks, Inc.*

## <u>TABLE OF CONTENTS</u>

**PAGE**

TABLE OF AUTHORITIES…………………………………………………………………………..iv

I.      INTRODUCTION…………………………………………………………………………...1

II.     RELEVANT BACKGROUND……………………………………………………...……..2

     A.      Mr. Liu's Involvement in Case…………………………………...…………….2

     B.      GlobalGeeks Motion to Appoint Second Chair Counsel…………………………....2

     C.      Stone Now Intends to Call Mr. Liu as a Witness to Testify on
Substantive and Contested Issues……………………………………………………..……….4

III.    ARGUMENT………………………………………………………………….………….5

     A.      Rule 4-3.7 of the Florida Rules of Professional Conduct is
Designed to Prevent Prejudice to Both Parties………………………………………......5

     B.      Mr. Liu is a Necessary Witness……………………………………….………….6

     C.      Mr. Liu's Testimony Will Address Contested Issues……………………….……..8

          1.      The March 30, 2020 email from Ahmad Loul……………………….……8

          2.      The Revisions and Negotiation of an Unexecuted April 24, 2020
Agreement…………………………………………………………………………...9

          3.      The Negotiation of a June 8, 2020 Agreement that the Parties
Never Signed…………………………………………………………………..11

     D.      Mr. Liu's Dual Rule as Stone's Advocate and as Stone's Necessary
Fact Witness Prejudices Both Parties……………………………………………...………11

          1.      Mr. Liu's Testimony Will Prejudice Stone………………………………11

          2.      Mr. Liu's Testimony Will Prejudice GlobalGeeks………………………12

     E.      The Facts of this Case Support Disqualification Even if Stone May
Suffer Hardship……………………………………………………………………….13

     F.      Other Courts Have Disqualified Trial Counsel in Similar Circumstances………14

*Stone v GlobalGeeks*
*Case No.: 1:20-cv-23251-BB*

**PAGE**

IV.    CONCLUSION……………………………………………………………………16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbell*, 939 F. Supp. at 864 ...................................................................................... 13

*Admiral Ins. Co. v. Zurich Am. Ins. Co. of Illinois*, No. 14-60079-CIV, 2014 WL 11706440, at *2 (S.D. Fla. July 24, 2014) ............................................................................................... 7

*AlliedSignal Recovery Tr. v. AlliedSignal, Inc.*, 934 So. 2d 675, 678 (Fla. Dist. Ct. App. 2006) .. 6

*Ballou v. Talari*, No. 8:16-CV-0598-T-MAP, 2017 WL 11473692, at *2 (M.D. Fla. Aug. 15, 2017) ................................................................................................................ 7

*Eon Streams, Inc. v. Clear Channel Commc'ns, Inc.*, No. 3:05-cv-578, 2007 WL 954181 ........... 8

*In re Fischer*, No. 03 01222, 2006 WL 4667133, at *2 (Bankr. D. Md. July 7, 2006) ......... 15, 16

*Princeton Digital Image Corp. v. Off. Depot Inc.*, No. CV 13-239-LPS, 2017 WL 3573812, at *1 (D. Del. Aug. 17, 2017) ..................................................................................... 14,15

*Robert v. State*, 840 So. 2d 962, 970 (Fla. 2002) .......................................................... 6

*Ross v. Carnival Corp.*, No. 09-22834-CIV, 2011 WL 4527425, at *2 (S.D. Fla. Sept. 28, 2011) ..................................................................................................................... 14

*United States v. Abbell*, 939 F. Supp. 860, 863–64 (S.D. Fla. 1996)...................................... iv, 12

*Zuma Seguros, CA v. World Jet of Delaware, Inc.*, No. 15-22626-CIV, 2017 WL 3705585, at *2 (S.D. Fla. Aug. 28, 2017)....................................................................................... 6

**Other Authorities**

Ethical Consideration of 5-0 of the ABA Code of Professional Responsibility.......................... 12

**Rules**

Fed. R. Civ. Pr. 16(b)(4) ........................................................................................... 4

Rule 3.7 of Maryland's Rules of Professional Conduct ...................................................... 15

Rule 4-3.7 of the Florida Rules of Professional Conduct ...................................................... 1, 5, 8

Defendant and Counterclaim Plaintiff, GlobalGeeks, Inc. ("GlobalGeeks") by and through its undersigned counsel, hereby submits this Memorandum of Law in Support of its Expedited Motion to Disqualify Jianyin Liu, Esq. as trial counsel in this case for Plaintiff, Stone Technology (HK) Co., Ltd. ("Stone").

## I.      INTRODUCTION

Rule 4-3.7 of the Florida Rules of Professional Conduct prohibits a lawyer from being an advocate at trial if "the lawyer is likely to be a necessary witness on behalf of the client" unless certain exceptions are satisfied. Stone has made clear in recent weeks that Jianyin Liu, Esq. (also known as James Liu, Esq., "Mr. Liu") will be a witness on behalf of Stone in this case and Mr. Liu will testify on substantive and contested issues. The result is that Mr. Liu must be disqualified as Stone's trial counsel to avoid inevitable prejudice to both parties.

GlobalGeeks previously sought the appointment of second chair counsel to represent Stone while GlobalGeeks cross examined Mr. Liu at trial. During the hearing on that motion and in her Report and Recommendation, Judge Lauren Fleischer Louis stated things clearly: if Stone intended to call Mr. Liu as a witness at trial, there could be a disqualification issue. *See* ECF No. 141, Report and Recommendation Denying Motion to Appoint Second Chair Counsel (Report and Recommendation adopted by Judge Bloom's August 25, 2021 Order, ECF No. 159). Undaunted by the Magistrate Judge's admonition, since that hearing and the Report and Recommendation, Stone has done the following:

(1)      named Mr. Liu as one of its witnesses in the parties' Revised Witness List;

(2)      stated that Mr. Liu's testimony will address three substantive and contested issues in the case;

    (3)      designated portions of Mr. Liu's deposition transcript to be read to the jury; and

    (4)      identified a significant number of trial exhibits for which he is a sender or recipient.

Stone's trial strategy has placed Mr. Liu at the center of this case. At this point there can be no doubt that he is a likely to be a necessary witness on behalf of Stone and it is equally clear that his testimony will relate to contested issues. As a result, none of the exceptions to Rule 4-3.7 apply. The issue of disqualification is no longer a hypothetical one. The issue is past brewing and it is ripe for determination. Mr. Liu must be disqualified as trial counsel.

## II.    RELEVANT BACKGROUND

### A.    Mr. Liu's Involvement in the Case.

Mr. Liu was Stone's counsel throughout the duration of the transactions giving rise to this litigation and was also involved in the negotiations surrounding these transactions. Mr. Liu is also sole counsel for Stone in this litigation, as he has been throughout. Irrespective of his role as counsel in this litigation, Mr. Liu's knowledge and involvement in the underlying transactions make him a material witness in connection with this litigation.

Stone acknowledged Mr. Liu's central role in the facts by listing him as a witness in Stone's initial disclosures and by making him available for a deposition. During that deposition, counsel for GlobalGeeks asked Mr. Liu if he planned to testify as part of Stone's case in chief. Mr. Liu provided a long answer that can be summarized as "I don't think so." ECF No. 74-1, J. Liu dep. at 13:2-14:13.

### B.    GlobalGeeks Motion to Appoint Second Chair Counsel.

Based on Mr. Liu's representation that he would not testify at trial on behalf of Stone, GlobalGeeks did not seek to disqualify Mr. Liu as trial counsel on this case. However, on June 9, 2021, GlobalGeeks filed a Motion to Compel Second Chair Counsel for Stone (ECF No. 81) as GlobalGeeks was likely to call Mr. Liu in its case in chief. As described in GlobalGeeks' Memorandum of Law (ECF No. 83-1) and in its Reply Brief (ECF No. 122), GlobalGeeks filed the motion as a way to reduce the risk of prejudice to any party and to avoid the potential for juror confusion when Mr. Liu is testifying with Stone's counsel table remaining empty.

This Court referred the matter to Magistrate Judge Louis who held a phone hearing on August 3, 2020. During that hearing, Mr. Liu stated for the first time "that he may need to testify on behalf of his client to lay a foundation to introduce an email, which was characterized as a key but uncontested document." ECF No. 141, at 2. Mr. Liu further stated that any testimony he might offer would be limited to laying a foundation for the admission of an email on which he is copied. *Id.* at 3. Mr. Liu further explained that any such testimony would be uncontested, but Mr. Liu did not provide a clear explanation for the actual scope of his testimony.

On August 10, 2021, Judge Louis issued her Report and Recommendation that the motion be denied without prejudice (ECF No. 141). *Id.* Judge Louis made clear that she would view the matter differently if Stone intended to call Mr. Liu as a witness in its case in chief: "while the potential for disqualification is brewing, it is insufficient at this posture to conclude that it is 'likely' that Mr. Liu will be called as a witness." *Id.* at 3. Judge Louis similarly urged Mr. Liu to consider himself warned regarding the consequences of naming himself as a witness on behalf of Stone:

> Of course, the Court retains both the authority to determine, should Plaintiff decide to rely on Mr. Liu for his testimony, that the disqualification of counsel at that juncture does not establish good cause required for the continuation of a trial date. Fed. R. Civ. Pr.

16(b)(4). As noted at the hearing, Plaintiff is in the best position to
know the likelihood of Mr. Liu being called as a necessary witness
on behalf of his client; an assessment Plaintiff should be making
without awaiting a court order disqualifying Mr. Liu.

*Id.*

**C.    Stone Now Intends to Call Mr. Liu as a Witness to Testify on Substantive and
Contested Issues.**

On August 24, 2021, Stone sent GlobalGeeks a draft joint witness list. That draft included

Mr. Liu as a witness and a parenthetical stating that he would be testifying "for the limited purpose

of the issues of receiving the email on March 30, 2020 from Ahmad," which was consistent with

Mr. Liu's representation to Judge Louis during the August 3 hearing. Ex. A, Aug. 24, 2021, email

from J. Liu and attachment, at 4. On the following day, counsel for GlobalGeeks followed up,

asking if Mr. Liu could elaborate on the anticipated scope of his testimony. Mr. Liu provided a

somewhat vague response, stating:

> I think I might be able to testify on the June 8 Agreement drafts and
> their content and the April 24 agreement draft and revisions back
> and forth. All of them are stipulated as authentic.
>
> In terms of the email, I might testify that the content of the email I
> received. Other than those, I won't testify anything out of the
> purview unstipulated.
>
> Let me know what you think.

Ex. B, Aug. 25, 2021 email chain at 4. Counsel for GlobalGeeks responded by stating that such

testimony would violate Rule 3.7. *Id.* Mr. Liu's position is that these issues are uncontested and

therefore his testimony is permissible. *Id.* at 3.

In an effort to work through these issues and determine if Mr. Liu's testimony would be

limited to uncontested issues, counsel for GlobalGeeks sought to drill down on the substance of

*Stone v GlobalGeeks*
*Case No.: 1:20-cv-23251-BB*

Mr. Liu's testimony and how it would be presented. *Id.* at 2-3. As it stands now, it appears that Mr. Liu plans to testify on the following issues:

1. The content of a March 30, 2020 email from Ahmad Loul to Jianyin Liu, Philip Peng, and Abdul Loul;

2. The revisions sent between GlobalGeeks and Stone with respect to a draft April 24, 2020 agreement that was never signed; and

3. The negotiation of a draft June 8, 2020 agreement that was never signed.

*Id.* at 1.

Mr. Liu also indicated that he did not plan to ask another lawyer to be present to ask him questions in connection with his direct examination (or his cross-examination by undersigned counsel) and that he "might request the judge to allow [him] to testify the portion without asking another lawyer to ask me questions." *Id.* at 2. As of the filing of this Motion, Mr. Liu has not filed any such motion. The result is that Stone's current plan for trial is to have its lawyer testify through open ended narrative on issues that are most certainly not "uncontested." *See* Section IV.C., *infra*.

Finally, on August 30, 2021, the parties filed their Revised Joint Witness List (ECF No. 161), which identified the amount of time that each party intended to call their witnesses for direct and cross examination. Stone now intends to have Mr. Liu testify for approximately one hour. *Id.*

## III.   ARGUMENT

### A.   Rule 4-3.7 of the Florida Rules of Professional Conduct is Designed to Prevent Prejudice to Both Parties.

Rule 4-3.7 of the Florida Rules of Professional Conduct provides that a lawyer may not act in the dual role of witness and advocate at trial on behalf of his client except in certain limited circumstance. Those exceptions are when:

(1) the testimony relates to an uncontested issue;

**5**

**SAAVEDRA | GOODWIN**

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
(3) the testimony relates to the nature and value of legal services rendered in the case; or
(4) disqualification of the lawyer would work substantial hardship on the client.

The "purpose of the rule is to prevent the evils that arise when a lawyer dons the hats of both an advocate and witness for his or her own client. Such a dual role can prejudice the opposing side and create a conflict of interest." *Robert v. State*, 840 So. 2d 962, 970 (Fla. 2002). Examples of "these 'evils' include the prejudicial scenarios where the jury may give more weight to a lawyer's testimony or where the lawyer's testimony may differ from the client's own testimony." *Zuma Seguros, CA v. World Jet of Delaware, Inc.*, No. 15-22626-CIV, 2017 WL 3705585, at *2 (S.D. Fla. Aug. 28, 2017); *AlliedSignal Recovery Tr. v. AlliedSignal, Inc.*, 934 So. 2d 675, 678 (Fla. Dist. Ct. App. 2006) ("the dual role could prejudice the opposing party by bolstering the lawyer's testimony for his client because it comes from an advocate.").

## B.    Mr. Liu is a Necessary Witness.

By naming Mr. Liu as one of its witnesses as part of its case in chief, Stone must concede that Mr. Liu is a necessary witness. He is so necessary, that Stone designated portions of Mr. Liu's testimony to be read to the jury in the event that Mr. Liu is unavailable to testify live at trial. *See* ECF No. 149, Stone Deposition Designations, at 9 ("Exhibit F: Jianyin Liu (aka James Liu) (ECF No. 74-1)"). The designated portion of Mr. Liu's deposition includes Mr. Liu's testimony that Stone intended for all of its transactions with GlobalGeeks to be performed as 50/50 profit sharing deals. *See id.* at lines 6 and 7.

Stone has also demonstrated that Mr. Liu is a necessary witness by the fact he is the only witness who can testify regarding certain documents included in Stone's exhibit list. The following examples stand out:

- Pltf. Ex. No. 3, "Email 46 from Stone" is an email thread between Ahmad Loul and Mr. Liu regarding a draft agreement that the parties never executed. A copy of Email 46 is attached hereto as Ex. C.

- Pltf. Ex. No. 24, "Jianyin Liu's Email 04/25/20 (DE 60-1)" is an email in which Mr. Liu provides revisions to a draft agreement exchanged by the parties in late April 2020. *See* ECF No. 60-1.

- Pltf. Ex. No. 45, "Email 67" is a June 8, 2020 email attaching a draft agreement sent by Mr. Liu to Ahmad Loul and copying Philip Peng. A copy of Email 67 is attached hereto as Ex. D.

Without Mr. Liu's testimony, these documents are inadmissible. Moreover, Mr. Liu's name is all over the parties' exhibits. By GlobalGeeks' count, Stone's exhibit list contains 31 emails that Stone expects to or may offer into evidence. Of those 31 emails, Mr. Liu is a sender or recipient on 13 of those emails. *See* ECF No. 170. Mr. Liu is also the drafter of three draft and unexecuted agreements, which are identified as Pltf. Exhibit Nos. 2, 20, 21.

By so naming its trial counsel as a witness, Stone has conceded that Mr. Liu is a necessary witness in this case and that there no "other sources available that can demonstrate the matters at issue." *See Admiral Ins. Co. v. Zurich Am. Ins. Co. of Illinois*, No. 14-60079-CIV, 2014 WL 11706440, at *2 (S.D. Fla. July 24, 2014); *see Ballou v. Talari*, No. 8:16-CV-0598-T-MAP, 2017 WL 11473692, at *2 (M.D. Fla. Aug. 15, 2017) ("A lawyer is not a necessary witness when there are other available witnesses to testify to the information."); *Eon Streams, Inc. v. Clear Channel*

*Commc'ns, Inc.*, No. 3:05-cv-578, 2007 WL 954181, at *4 (E.D. Tenn. Mar. 27, 2007) ("Any person testifying to a contested issue is a necessary witness.").

Having identified Mr. Liu as a fact witness to testify on substantive matters in this case when there will not be any other witnesses to testify to these issues on behalf of Stone, Mr. Liu is certainly a necessary witness for Stone.

### C.   Mr. Liu's Testimony Will Address Contested Issues.

Stone will likely argue that Mr. Liu may testify as part of its case in chief, because the testimony will relate to uncontested issues. *See* Rule 4-3.7(a)(1); Ex. B at 3. But the three issues that Mr. Liu has identified to be covered in his testimony are very much in dispute. The identified topics of testimony and the related documents go to the very heart of the disputed issues in this case. Mr. Liu's testimony on these topics will support Stone's theory of the case that the parties had an overarching agreement that they agreed to split profits for all of the transactions at issue.

The parties' briefing at summary judgment and the Parties' Joint Pre-Trial Stipulation makes this clear (ECF No. 171).

### 1.   The March 30, 2020 email from Ahmad Loul.

Stone's Motion for Partial Summary Judgment and its description of the case in the Pre-Trial Stipulation places an email sent by Ahmad Loul at the heart of its case. Ex. E, March 30, 2020 Email; *see* ECF No. 171 at 7-8. Specifically, Stone argues that the email constitutes an offer by GlobalGeeks to apply a draft agreement prepared by Mr. Liu and sent in a different email to the parties' future transactions. ECF No. 82 at 3. As a result, Stone argues that this email establishes that Stone is entitled to judgment on its claims relating to Purchase Order 82800 (Counts I, II, III) and Purchase Order 82806 (Counts IV and V). *See id.* at 3, 4, 9, 10, 11, 14.

As GlobalGeeks argued in response to Stone's Motion, nothing in the March 30, 2020 email shows an offer to apply the terms of a draft contract prepared by Mr. Liu to any future deals. ECF No. 108 at 4-5. Ahmad Loul states in the email, "[t]hank you for the agreement. I am reviewing it now before we send a purchase order and payment to make sure we are on the same page." *Id.*; Ex. E at GEEKS0518. The email demonstrates that as of March 30, 2020, the parties did not have a meeting of the minds on the terms of any future deals.

Stone confirmed that this issue remains contested in the portions of the parties' Pre-trial Stipulation. In the section addressing the issues that Stone contends "remain to be litigated at trial", it identified the following issues:

- Whether the March 30 email constituted a request for the 50/50 profit sharing agreement to apply to its stock request for PO82800 and PO82806. ECF No. 171 at 17, ¶ 7.

- "Whether the course of dealing of 50/50 profit sharing (phone deals and March 2020 Mask Deals) supports the March 30, 2020 email from Ahmad Loul, CEO of GG, which requested to sharing profit/loss of the future mask orders for PO82800 and PO82806?" *Id.* at 19, ¶ 14; *see also id.* at ¶¶ 8, 9.

Any testimony by Mr. Liu on this issue would necessarily relate to and address these core disputed issues.

### 2. The Revisions and Negotiation of an Unexecuted April 24, 2020 Agreement.

Stone argued in its summary judgment briefs that the parties had an agreement for 50/50 profit sharing on all of their deals, because the parties exchanged drafts of an agreement that included such term in late April 2020. *See* Plaintiff's Motion for Rule 56 Partial Summary Judgment, ECF No. 82, at 7-8; Counter-Defendant's Second Amended Motion for Rule 56

Summary Judgment, ECF No. 71, at 18. Stone argues that in the face of such negotiations and the parties' performance on earlier and later deals, GlobalGeeks is bound by the terms in the exchanged draft agreements, particularly for Purchase Order 82806. *See* ECF No. 82 at 8 ("In the instant case, GG could have objected to the profit sharing scheme as it alleged in its Counterclaim (ECF No. 41, Counterclaim, ¶ 108) that for PO82806, Stone needed to take unilateral responsibility of the net loss.").

These issues are very much contested. Philip Peng, Stone's CEO, even disputes the position advocated in Stone's briefs. Mr. Peng, as Stone's Rule 30(b)(6) witness testified that the draft agreement discussed in those emails had nothing to do with Purchase Order 82800 or 82806 and that it was a proposal for future deals. P. Peng dep., ECF No.: 68-1 at 81:20-83:10 ("And so this draft agreement that's being discussed did not have to do with Purchase Order 82800 and Purchase Order 82806, correct? A. No. It's related to PO82811, PO82813, and KN95.").

Stone further confirmed that this issue remains contested by its inclusion among the issues that Stone contends "remain to be litigated at trial":

- "Whether or not after joint drafting of the agreement (unexecuted) around April 24, 2020, GG's April 29, 2020 email confirmation of receiving the 800K KN95 commercial invoices constituted acceptance of collaboration on May KN95 Orders? (Stone's 2nd Am. Complaint, Count VII- Breach of Contract of May KN95)." ECF No. 171 at 19, ¶ 17; *see also id.* at ¶¶ 18, 19.

- "Whether or not GG is unjustly enriched by refusing to share net loss after joint drafting of the agreement (unexecuted) around April 24, 2020, and GG's April 29, 2020 email confirmation of receiving the 800K KN95 commercial invoices, and GG's acquiescence after receiving commercial invoices of 275K KN95 masks sent

by Stone on April 30, 2020 Stone; and the commercial invoices of one million

KN95 masks on May 6, 2020? (Stone's 2nd Am. Complaint, Count IX- Unjust

Enrichment of May KN95)." *Id.* at ¶ 21.

3. **The Negotiation of a June 8, 2020 Agreement that the Parties Never Signed.**

The issues relating to the draft June 8, 2020 agreements are similarly contested. Stone

discusses the contested nature of these documents in detail on pages 5-11 of its Reply in support

of its Motion for Summary Judgment. ECF No. 125. GlobalGeeks argues that the exchanged drafts

are consistent with its position that the parties had an agreement for Purchase Order 82806 to be a

consignment deal and Stone argues it supports its position of a profit sharing arrangement. *See id.*

Mr. Liu is the only witness that can provide the testimony on behalf of Stone that the draft

June 8 agreements supports its position in this case. Even if Mr. Peng testifies live at trial, he

testified that he did not understand the draft June 8, 2020 Agreement:

> I don't - - honestly speaking, even now I don't know the meaning of
> this entire agreement mean. I'm not a lawyer, as I said. This is all
> legal, legal words. I don't know the meaning even.
> Q. You don't understand the meaning of it saying this is the entire
> agreement?
> A. I do not. If it's in Chinese, I know that, but if it's in English, I
> don't know the exact meaning.
> Q. Well, I don't want to - - I don't want to intrude on any attorney-
> client privilege, but did your lawyer  - - did James send you a version
> of this agreement in Chinese for you to read?
> A. No. He just sent me English.
> Q. And you didn't read the agreement before you sent it off to your
> partners?
> A. I trust James. That's why I pay him.

ECF No. 68-1, at 190:5-21.

Finally, on August 31, 2021, Stone provided its proposed demonstrative exhibits to

GlobalGeeks, *See* Ex. F. The provided demonstrative shows just how central the topics that Mr.

Liu intends to testify on are to Stone's case. Each of the identified topics are identified in the left-hand column of the first page of Stone's demonstrative exhibit and directly correspond to the topics that Stone has identified for Mr. Liu's testimony: (1) March 30, 2020 Draft Agreement, (2) April 24, 2020 Draft Agreement, and (3) June 8, 2020 Agreement (two versions in total). *Id.*; *see* p. 5, *supra.*

### D.   Mr. Liu's Dual Rule as Stone's Advocate and as Stone's Necessary Fact Witness Prejudices Both Parties.

#### 1.   Mr. Liu's Testimony Will Prejudice Stone.

One of the purposes behind Rule 3.7 is to avoid the problem of a lawyer having to argue his own credibility. "If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness." *United States v. Abbell*, 939 F. Supp. 860, 863–64 (S.D. Fla. 1996) (quoting Ethical Consideration of 5-0 of the ABA Code of Professional Responsibility). "An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility." *Id.* That is exactly what will happen if Mr. Liu testifies in this case and there are two prime ways in which Mr. Liu's credibility can be impeached.

First, as trial counsel, Mr. Liu is not a typical fact witness and has a financial interest in the outcome of this litigation. During his deposition, Mr. Liu testified that Stone is compensating him by paying an hourly rate, but also testified that he might receive a bonus from Stone in exchange for a favorable result in this case. ECF No. 74-1 at 89:5-90:18.

Second, just as the disputes between GlobalGeeks and Stone were coming to a head, in June of 2020, Mr. Liu attempted to do a business deal with GlobalGeeks to import millions of protective masks without any involvement from or by Stone. Ex. G, GEEKS0066-68. This impacts Mr. Liu's credibility both as a witness and as an advocate. Mr. Liu was attempting to do business with GlobalGeeks at the very same time that he now argues and will testify that GlobalGeeks was

breaching contracts with his client. Additionally, this attempted transaction demonstrates that Mr. Liu had no problem competing directly against his own client who was unaware that Mr. Liu was separately attempting to do business with GlobalGeeks. ECF No. 98-1, P. Peng dep. at 231:16-234:1.

### 2.    Mr. Liu's Testimony Will Prejudice GlobalGeeks.

Given that Mr. Liu may be Stone's only live witness from Stone at trial[1] and the only face that the jury will ever see from Stone, his role takes on even greater importance. There is a significant risk that the jury will not fully appreciate the difference between Mr. Liu's role as an advocate arguing the facts and his role as a witness, whose role "is to state facts objectively." *Abbell*, 939 F. Supp. at 864.

Additionally, while there is certainly the possibility that GlobalGeeks will impeach Mr. Liu's testimony, the risk of the opposite result is equally present. GlobalGeeks "may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case." *Id.*

### E.    The Facts of this Case Support Disqualification Even if Stone May Suffer Hardship.

Magistrate Judge Louis was clear during the August 3, 2021 hearing and in the August 10, 2021 Report and Recommendation. If Stone identified Mr. Liu on the August 30, 2021 witness list, Stone would be running the risk of Mr. Liu's disqualification and that such disqualification would not constitute good cause to continue the trial date. Since the time of the August 3 hearing, Stone has expanded the scope of Mr. Liu's anticipated testimony from laying the foundation for a single email to addressing three significant issues over the course of an hour of testimony.

---

[1] Stone has represented that Philip Peng may attend trial to testify live.

Magistrate Judge Louis anticipated this "brewing" issue and made clear to Stone and Mr. Liu it needed to address and resolve this issue immediately. The available options to Stone were clear: (1) either proceed to trial without calling Mr. Liu as a witness or (2) rely on Mr. Liu's testimony and retain new trial counsel. Rather than going with either viable option, Stone doubled down by expanding the scope of Mr. Liu's testimony while wholly ignoring the important ethical and professional considerations.

The Court has provided Stone with ample warning of the consequences of proceeding to rely on Mr. Liu's testimony. Given these facts, Stone cannot now claim that it will suffer substantial hardship as a result of its choices.

### F. Other Courts Have Disqualified Trial Counsel in Similar Circumstances.

While the remedy of disqualifying a party's counsel from participating at trial is a severe sanction, the facts warrant such relief here. Rule 4-3.7 is clear that a lawyer cannot be both an advocate at trial and a fact witness when he will testify on substantive and contested issues. As explained above, Mr. Liu is a necessary fact witness for Stone. Both Stone and GlobalGeeks' interests will be best served through his disqualification and would be a proper exercise of this Court's inherent jurisdiction to supervise the bar and to ensure compliance with the Rules of Professional Conduct. *See Ross v. Carnival Corp.*, No. 09-22834-CIV, 2011 WL 4527425, at *2 (S.D. Fla. Sept. 28, 2011).

In *Princeton Digital Image Corp. v. Off. Depot Inc.*, No. CV 13-239-LPS, 2017 WL 3573812, at *1 (D. Del. Aug. 17, 2017), the court disqualified the plaintiff's counsel where he appeared on both parties' "may call witness lists and ha[d] personal knowledge of relevant facts." The court recognized that disqualification is a severe sanction, but that it was necessary because counsel's "dual role will only serve to confuse or mislead the jurors who, unlike a judge, may find

it difficult to distinguish between the role of a fact witness and the role of counsel." *Id.* at *1, n. 4. The facts here are even more compelling than in *Princeton Digital Image Corp.*, because both GlobalGeeks and Stone have made clear that Mr. Liu *will testify* as part of their cases.

The court in *Princeton Digital Image Corp.* further explained that even if the lawyer did not testify, it would be "too prejudicial for him to serve as an advocate while his name and representations on his behalf of [the plaintiff] are at the epicenter of the disputes to be tried, replete in the record, and will be assessed by the jury as party admissions." *Id.* The situation is no different here. Mr. Liu is on many of the most important trial exhibits that the jury in this case will see and is a central figure in this case. Even if Stone changes its trial strategy and chooses not to call Mr. Liu, it is clear that Mr. Liu's name will be all over the documents that the parties will present to the jury and this fact alone will lead to juror confusion and prejudice. The deposition testimony makes clear that Mr. Liu will need to ask the witnesses many questions about things he said to them. *See e.g.* ECF No. 92-1, at 54:13-16; ECF No. 68-1, at 34-15-18 ("I'm showing you Exhibit N, which is the corresponding email 67 produced by Stone to Ahmad copying Philip. And this is written by Jianyin Liu, this is me and –").

*In re Fischer*, No. 03 01222, 2006 WL 4667133, at *2 (Bankr. D. Md. July 7, 2006) also contains parallel facts and resulted in disqualification. In *Fischer*, the court explained that it had previously explained to the counsel/witness "that he may not serve as both an advocate and a witness under" Rule 3.7 of Maryland's Rules of Professional Conduct, which is very similar to Florida's rule. *Id.* at *1. This warning is very similar to the warning given by Magistrate Judge Louis during the August 3 hearing and as provided in the August 10 Report and Recommendation. *See* ECF No. 141. The lawyer/witness argued that the opposing party was using Rule 3.7 "as a strategic litigation device or a technique of harassment," but the Court explained that it was the

plaintiff and not the defendant that that placed the lawyer/witness on its witness list. *Fischer*, 2006

WL 4667133, at *2.

The *Fischer* court viewed the issue of which party was calling trial counsel as a witness as

a significant and dispositive distinction:

> It is one thing for an attorney to seek excuse from Rule 3.7(a) where the opposing side has called him for tactical effect or for inconsequential purposes. But where an attorney has been named on his own client's witness list, has had weeks if not months to prepare new counsel, and has both outside and associate counsel available to assist if necessary, he should not be allowed to disregard the general provisions of Rule 3.7(a).

*Id.*

Just like the lawyer in *Fischer*, it should have been clear to Mr. Liu that if Stone named

him on its witness list, disqualification could likely result. In spite of this explicit warning, Stone

opted to list Mr. Liu anyway. Mr. Liu's status as a central figure in the facts of this case and Stone's

trial strategy of depending on him to prove its claims and defenses leaves only one option: Mr. Liu

must be disqualified as trial counsel in this case on behalf of Stone.

## IV. CONCLUSION

For these reasons, GlobalGeeks requests that the Court disqualify Jianyin Liu, Esq. from

serving as trial counsel on behalf of Stone in this case.

Dated: August 31, 2021                    Respectfully submitted,

  /s/ *Glen M. Lindsay*
Glen M. Lindsay, Esq.
Florida Bar No.: 59200
**SAAVEDRA | GOODWIN**
312 SE 17th Street
2nd Floor
Fort Lauderdale, FL 33316
Tel.: (954) 767-6333

**SAAVEDRA | GOODWIN**

*Stone v GlobalGeeks*
*Case No.: 1:20-cv-23251-BB*

Fax: (954) 767-8111
Email: glindsay@saavlaw.com
Service Email: eservice@saavlaw.com

and

Benjamin J. Eichel, Esq.*
BONI, ZACK & SNYDER
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004
Tel: 610.822.0200
Email: beichel@bonizack.com

**Attorneys for GlobalGeeks, Inc.**

*Admitted pro hac vice*

## <u>CERTIFICATION OF SERVICE</u>

I HEREBY CERTIFY that on August 31, 2021, I electronically filed the foregoing Motion to Disqualify with the Clerk of the Court by using the CM/ECF system. I further certify that I served the foregoing document on all counsel of record via CM/ECF as follows:

<u>/s/ *Glen M. Lindsay*</u>
Glen M. Lindsay, Esq.
Florida Bar No.: 59200